```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                  No. 05-cr-208-JD
                                                        Opinion No. 2007 DNH 006
Jonathan Platte

                                       O R D E R

Defendant Jonathan Platte moves to suppress the alleged controlled substances that were seized from the trunk of a car that was parked in the garage of his residence. The government objects and intends to introduce these materials as evidence in an upcoming trial charging the defendant with (1) conspiracy to distribute, and to possess with intent to distribute, cocaine, cocaine base, and heroin, (2) possession with intent to distribute heroin, cocaine, and marijuana, and (3) possession of a firearm in furtherance of a drug trafficking crime. See 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 924(c)(1)(A). On January 8, 2007, the court held a hearing on Platte's motion.

                                       Background

In early 2004, the New Hampshire State Police Narcotics Investigation Unit ("NIU") began an investigation of a suspected large-scale cocaine, crack, and heroin distribution ring operating in several towns in southern Hillsborough County, New

Hampshire.  On April 12, 2005, NIU Sergeant Ellen M. Arcieri applied for a warrant to search Platte's residence in Wilton, New Hampshire.  Sergeant Arcieri's application was accompanied by a detailed affidavit describing the investigation, including the statements of four confidential informants and an account of the physical surveillance conducted by police.  The affidavit describes a substantial drug distribution operation that involved the participation of several co-conspirators.  Platte is portrayed as the leader of the operation.

According to the warrant affidavit, Platte regularly traveled to Massachusetts to purchase substantial quantities of drugs (most often cocaine, crack, and heroin).  Platte did not travel alone on these pickups; one or two co-conspirators usually accompanied him in separate cars.  According to the confidential informants, these trips to Massachusetts occurred as often as three times a week, with each trip netting $3,000 to $10,000 worth of drugs.  Platte would then bring the drugs back to his parents' ranch-style house in Wilton.

Platte lived in a basement apartment in the house and his parents lived upstairs.  Platte and his co-conspirators would repackage the drugs for sale in a loft above an attached two-car garage.  "Runners" were then paid to sell "kits" containing specific amounts of crack, cocaine, and heroin.  At the time

Sergeant Arcieri applied for the search warrant, the police believed that four people lived at the Wilton residence: Platte, his parents, Lawrence and Linda Platte, and his girlfriend, Kerry O'Connor.

Based on Arcieri's affidavit, a justice of the Concord District Court found probable cause to believe that evidence of an illegal drug distribution organization would be found at the Platte residence in Wilton. The court authorized a search of that residence, including:

> Jonathan Platte's basement apartment and Lawrence and Linda Platte's residence on the second floor as well as the two-car garage and loft area. . . . includ[ing] any and all outbuildings, sheds, and any other areas located within the residence occupied by either Jonathan Platte, Lawrence and Linda Platte, and Kerry O'Connor.

Warrant, Attach. B (summarizing Attach. A). The warrant also authorized the search of any "vehicles owned and/or operated by Jonathan Platte, Lawrence Platte, Linda Platte, and Kerry O'Connor," and specifically listed a number of "known vehicles." Warrant, Attach. A. The warrant authorized a search for evidence relating to a drug distribution organization, including such things as books, ledgers, receipts, phone records, currency, drug paraphernalia, and firearms, but did not specifically authorize a search for controlled substances. Warrant, Attach. B.

The state police executed the search warrant on April 14, 2005. Trooper Scott Frye was assigned the task of cataloguing all the items seized. His report indicates that fourteen members of the state police and the Chief of the Wilton Police Department participated in the search. The state police also brought a drug detection dog, Hunter, and its handler, Trooper Daniel Needham. Although the warrant did not authorize a search for drugs, both Needham and Arcieri testified at the suppression hearing that it is not unusual to use a drug detection dog in a search for drug paraphernalia because they can detect trace amounts of drugs on scales, plastic bags, and other such items. Although Platte was not present at the time of the search, both of his parents and O'Connor were.

The search resulted in the seizure of several items found in different locations throughout the premises. According to Needham, he and Hunter began with a sweep of the interior of the house. Needham testified that the dog alerted in several different locations in the house. Thereafter, Needham brought Hunter to investigate the several cars located on the exterior of the house. After that search proved fruitless, Needham allowed Hunter to rest while he went into the garage to aid in the search of the loft above the garage.

Needham next began a search of the garage itself.  Inside the garage were a number of tool chests, some all-terrain vehicles, and a red Subaru Impreza.  Although the Subaru's doors were unlocked, the rear of the car was parked against the garage door in such a way that the trunk could not be opened.  Needham opened the front passenger door and smelled the odor of marijuana.  He noticed that the odor was stronger toward the rear of the car.  Finding nothing in the backseat he endeavored to obtain entry into the trunk.  Because the trunk would not open, Needham gained entry to the trunk by pulling the rear seats down.  Peering inside the trunk with a flashlight, Needham saw a black leather bag containing a brown paper bag.  He seized the bags and ultimately discovered what he believed to be three pounds of marijuana inside.

Needham subsequently retrieved Hunter, who then sniffed around the exterior of the car and alerted to the trunk area.  Needham testified that he saw a box for a video surveillance camera in the trunk, but he did not remove it.  At some point thereafter, another officer removed the box and found what appeared to be plastic bags containing heroin and cocaine.

Platte now moves to suppress all evidence seized from the Subaru.  He argues that the search of the Subaru was not authorized by the search warrant and therefore violated his

rights under the Fourth Amendment. The government objects with a trio of arguments. First, the government contends that the defendant lacks standing to challenge the search of the Subaru. Second, the government argues the search of the Subaru was within the scope of the warrant. Finally, the government argues that the police dog's detection of controlled substances in the trunk of the car established probable cause to search the car independent of the warrant.

At the outset, it is necessary to frame the parameters of the defendant's challenge. Four related, but separate incidents occurred that are relevant to the challenged search: (1) the search of the garage; (2) the search of the car; (3) the seizure of containers found in the trunk of the car; and (4) the search of those containers. The defendant has challenged only the search of the car. The first question is whether the defendant has standing to challenge that search. See United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988).

### Standing

When a defendant challenges a search under the Fourth Amendment, he must first establish that he had a reasonable expectation of privacy in the thing searched. United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004) (defendant's burden); see

also United States v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991) ("[T]he term 'standing' [is used] somewhat imprecisely to refer to this threshold substantive determination."). There are several factors that are pertinent to the threshold inquiry:

> ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case.

Sanchez, 943 F.2d at 113.

The government argues that the defendant has failed to present facts establishing that "he had any ownership interest in the vehicle and/or any possessory interest in any thing seized from the vehicle." Obj. at 7. But Platte asserts that, although he did not own the Subaru, he was the bailee of the car. He claims that a few days before the search warrant was executed, his sister had towed the Subaru to his garage and placed it in his custody for the purpose of replacing its motor.[1] An affidavit filed by his sister similarly states that she "placed [the car] into his sole custody for repairs." True Aff. At the suppression hearing, Platte testified that he had removed the old

---

[1] Platte claims that he ran an auto repair shop out of the garage and the warrant affidavit notes that two confidential informants had stated that Platte periodically worked on vehicles in the garage.

7

motor and was preparing to install a new one.  Trooper Needham's police report confirms that the engine had been removed.  On cross-examination, Platte denied that the drugs in the car belonged to him and claimed that he was unaware of their presence in the car.  The government attempted to impeach the defendant's testimony by drawing his credibility into question.  Given the corroboration in the record, however, the court will credit the defendant's testimony for the purposes of deciding this motion.

Generally, a person in possession of a premises has standing to challenge a search of those premises and a seizure of any objects found within.  6 Wayne R. LaFave, Search and Seizure § 11.3(a) (4th ed. 2004).  But, to the extent the police presence on the premises was otherwise lawful, such a person does not necessarily have standing to challenge the search of a container belonging to another that is found within the premises.  See id.; United States v. Garcia-Rosa, 876 F.2d 209, 218-19 (1st Cir. 1989) (finding standing regarding the search of the defendant's house and the seizure of a box found within, but no standing regarding the search of the box, which the defendant claimed was not his), vacated on other grounds sub nom. Rivera-Feliciano v. United States, 498 U.S. 954 (1990).

In the totality of the circumstances, the court concludes that Platte had both a subjective and a reasonable expectation of

privacy in the Subaru.  Although the car was not registered to Platte, he had lawful possession of it and "took normal precautions to maintain his privacy" by keeping the car parked inside his garage.[2]  United States v. Gomez, 276 F.3d 694, 697-98 (5th Cir. 2001) (finding the defendant had a reasonable expectation of privacy in a truck he did not own that was parked in his driveway).  He exercised significant control over the car as evidenced by his removal of the car's motor.  Moreover, his sister gave him sole custody of the car and he did not allow anyone else to access it.  Cf. United States v. Baker, 221 F.3d 438, 442-43 (3d Cir. 2000) (finding the defendant had a reasonable expectation of privacy in a car that he had borrowed with permission from a friend); United States v. Orrego-Fernandez, 78 F.3d 1497, 1502 (10th Cir. 1996) ("Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle.").

This is not a case of "casual possession."  Sanchez, 943 F.2d at 113-14.  Unlike the defendant in Sanchez, Platte was given "direct authority" from the owner to possess the car, and

---

[2]That Platte was not the legal owner of the house and the attached garage is not significant.  See United States v. Paradis, 351 F.3d 21, 27 (1st Cir. 2003); United States v. Evans, 92 F.3d 540, 543 (7th Cir. 1996) (Posner, J.).

Platte's relationship with the owner -- his sister and a customer of his auto shop -- is well established.  See id. at 114 (noting that, had the defendant "demonstrated a more intimate relationship with the car's owner or a history of regular use of the [car]," the court would have been more likely to find a legitimate expectation of privacy).[3]  Platte, therefore, has standing to challenge the search.

### The Search

Platte contends that a search of the Subaru was not within the scope of the search warrant and, therefore, that Needham's search of the car violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  Platte notes that the Subaru was not included in the warrant's list of "known" vehicles and that it was registered to Platte's sister who was not named in the warrant.  Platte contends that Needham found the car's registration -- indicating that the car was owned by someone outside the warrant -- before he found the drugs in the trunk.  At that moment, Platte argues, it became apparent that

---

[3] Although Platte's denial of any ownership interest in the things seized from the car cuts against his standing argument, in the totality of the circumstances presented here, this one factor does not tip the balance in favor of denying standing to Platte. See Sanchez, 943 F.2d at 113-14.

the Subaru was outside the scope of the warrant and Needham should have immediately discontinued his search of the car.

The sequence of events, however, is unclear.  Frye's report indicates that three events -- the discovery of (1) the marijuana, (2) the registration, and (3) the cocaine and heroin -- all occurred at approximately 8:25 p.m.  Although the events are listed in that order, it does not appear that Frye's report was written in strict chronological order.  Needham's report does not mention the discovery of the registration and at the suppression hearing he testified that he did not recall finding the registration.  Nevertheless, even accepting Platte's version of the sequence of events, the search of the Subaru did not fall outside the scope of the warrant.

As a general rule, "any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant."  United States v. Gray, 814 F.2d 49, 51 (1st Cir. 1987) (citing United States v. Ross, 456 U.S. 798, 820-21 (1982).  A car parked in a garage is ordinarily considered "just another interior container, like a closet or a desk."  United States v. Evans, 92 F.3d 540, 543 (7th Cir. 1996) (Posner, J.).  Thus, if the trunk of the car "is not too small to hold what the search

warrant authorizes the police to look for, they can search the trunk." Id.; accord. United States v. Asselin, 775 F.2d 445, 447 (1st Cir. 1985) (upholding the search of a disabled car parked adjacent to a carport that was attached to the premises).

Platte's argument suggests that the search of the car was not authorized by the plain language of the warrant itself. But the warrant specifically authorized the search of the attached garage and "any outbuildings and vehicles owned and/or operated by Jonathan Platte, Lawrence Platte, Linda Platte, and Kerry O'Connor." It then listed the "known vehicles," but that list was plainly not intended to amount to an exclusive list or to narrow the scope of the warrant. Cf. United States v. Pennington, 287 F.3d 739, 745 (8th Cir. 2002) ("Though these vehicles were not specifically listed in the warrant as places to be searched, a vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises.") (internal quotation marks omitted).

The sin qua non factor of the scope-of-the-warrant inquiry, as in the standing inquiry, is the extent of the dominion and control exerted by Platte over the thing searched. See United States v. Patterson, 278 F.3d 315, 318 (4th Cir. 2002) ("Where a warrant authorizes the search of an entire property or premises,

12

the scope of the warrant includes automobiles on the property or premises that are owned by or are under the dominion and control of the premises owner or which reasonably appear to be so controlled."); United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir. 1990) (same).  Thus, the facts that supported Platte's standing argument -- the facts outlined above establishing Platte's status as a bailee with exclusive control over the car -- cut against his merits argument.  In the circumstances of this case, the fact that the car was registered to a person not mentioned in the warrant does not provide a basis for challenging the search.  See Evans, 92 F.3d at 543-44 ("[I]t does not matter [who owns the car] unless it obviously belonged to someone wholly uninvolved in the criminal activities going on in the house.").

Platte attempts to seize on the above-quoted language from Evans, arguing that, once Needham discovered the registration, it became "obvious" that the car "belonged to someone wholly uninvolved" in Platte's criminal activities.  But the record underlying the warrant belies this contention.  According to the warrant affidavit, one of the confidential informants stated that Platte commonly had other people register his vehicles in their names in order to protect his identity and impede any police investigation.  Warrant Aff. at 8-9.  Thus, that the car was registered in the name of Platte's sister did not make it obvious

that the car truly belonged to her.  Moreover, two other informants stated that Platte often hid his drugs in cars parked on the property,[4] and that Platte kept a loaded handgun in his car for his trips to Massachusetts to buy drugs.  Warrant Aff. at 36.  Although the police were not aware that Platte had used the Subaru for drug pickups, they were aware that Platte frequently switched cars.  Hearing Tr. at 25.  Thus, there was reason to believe that drug paraphernalia or firearms might be found in any of the cars parked on the premises.  See Pennington, 287 F.3d at 745 (upholding the search of a truck where "the warrant affidavit specifically stated that [the defendant] 'often carries methamphetamine in his personal vehicle'").  Accordingly, the Subaru fell within the scope of the warrant and its search did not violate the Fourth Amendment.[5]

---

[4]One of the informants specifically stated that Platte stored drugs in "cars he was working on."  Warrant Aff. at 21.

[5]Because the warrant authorized Needham's search, the court needn't consider the government's dubious contention that the police dog's post-hoc detection provided probable cause for the search of a disabled car.

## Conclusion

The defendant's motion to suppress (document no. 31) is denied.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

January 16, 2007

cc: Paul J. Garrity, Esquire
    Terry L. Ollila, Esquire